**Lansing, Michigan**

# Opinion

Chief Justice:        Justices:

Robert P. Young, Jr.  Michael F. Cavanagh
                      Marilyn Kelly
                      Stephen J. Markman
                      Diane M. Hathaway
                      Mary Beth Kelly
                      Brian K. Zahra

FILED JULY 29, 2011

S T A T E   O F   M I C H I G A N

SUPREME COURT

DUJUAN LIGONS, Personal Representative
of the Estate of EDRIS LIGONS,

        Plaintiff-Appellant,

v                                No. 139978

CRITTENTON HOSPITAL, a/k/a
CRITTENTON HOSPITAL MEDICAL
CENTER, DAVID BRUCE BAUER, M.D.,
and ROCHESTER EMERGENCY GROUP,
P.C.,

        Defendants-Appellees.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

    We are called upon to answer the question whether a medical malpractice suit must be dismissed if a defective affidavit of merit (AOM) is filed after both the limitations period and the saving period have expired. We hold that in such cases, dismissal with prejudice must follow because allowing amendment of the deficient AOM would directly conflict with the statutory scheme governing medical malpractice actions,

the clear language of the court rules, and precedent of this Court. Accordingly, we affirm the judgment of the Court of Appeals dismissing plaintiff's case with prejudice.

## I. FACTS AND PROCEDURAL HISTORY

Edris Ligons underwent a colonoscopy on January 14, 2002, and four days later developed vomiting, diarrhea, chills, and fever.[1] On January 22, 2002, still suffering from those symptoms, Ligons went to the emergency room at defendant Crittenton Hospital, where she was treated by defendant Dr. David Bauer. An abdominal x-ray suggested the possibility of a partial small-bowel obstruction. When Ligons refused to be admitted to the hospital, she was given antibiotics, treated for dehydration, and discharged with instructions to follow up with her treating physician the next day. Ligons did so and was immediately sent to the emergency room, where she was admitted.

After extensive testing and the involvement of seven doctors, it was determined that surgery was necessary. Ligons initially refused any surgery, but eventually agreed. Exploratory surgery performed on January 24, 2002, revealed a perforated colon, an inflamed pelvic mass, and an abscess. The exploratory surgery further showed that Ligons had an advanced form of liver failure and that her liver had become hard and rocklike in appearance. Ligons had been an alcoholic for more than 30 years and suffered from acute cirrhosis with ascites, alcoholic pancreatitis, alcoholic hepatitis, coagulopathy, diverticulosis coli, and colon polyps. Removal of her colon was

---

[1] The physician who performed the colonoscopy is no longer a party to this suit.

2

impossible because of these preexisting conditions. Ligons never recovered from the surgery and died on January 29, 2002.

Plaintiff was appointed personal representative of Ligon's estate on February 22, 2005, and delivered to defendants a notice of intent to sue[2] (NOI) on June 8, 2005. On October 21, 2005, plaintiff delivered a supplemental NOI providing more detail regarding proximate cause. He filed a complaint in the Oakland Circuit Court on April 7, 2006, accompanied by two AOMs.

The first AOM, signed March 8, 2005, was executed by Dr. George Sternbach, an emergency-medicine specialist. Although the AOM contained 23 paragraphs regarding the manner in which the standard of care had been breached, only two of those paragraphs pertained specifically to this case:

> v. [The failure to a]dmit the patient to the hospital on January 22, 2002.

> w. [The failure to o]btain appropriate consults on January 22, 2002.

Regarding the manner in which these breaches were the proximate cause of the injury, the AOM provided, "As a direct and proximate cause of the imprudent acts and omission committed by the individuals identified herein, Edris Ligons, died."

The second AOM, signed on June 17, 2005, by Dr. Fred Thomas, did not address the required standard of practice or care, the breach of the standard of care, or the actions that should have been taken or omitted to comply with the standard of care. Rather, the Thomas AOM addressed only the manner in which the breach of the standard of practice

---

[2] See MCL 600.2912b.

3

or care was the proximate cause of the alleged injury: "It is my opinion that had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate consults on January 22, 2002, as outlined in Dr. Sternbach's affidavit[,] that Edris Ligons would not have died."

In March 2007, Bauer and defendant Rochester Emergency Group, P.C. (Bauer's practice group) moved for summary disposition, arguing that plaintiff's NOIs and AOMs did not comply with the governing statutes. In April 2007, Crittenton concurred in the motion. The trial court denied defendants' motions on May 22, 2007.

Bauer and Rochester Emergency applied for leave to file an interlocutory appeal, which the Court of Appeals initially denied.[3] Bauer and Rochester Emergency then applied for leave to appeal in this Court and, in lieu of granting their application, we remanded the case to the Court of Appeals for consideration as on leave granted.[4] The Court of Appeals later granted Crittenton's application for leave to file a delayed cross-appeal.[5]

On remand from this Court, the Court of Appeals concluded that plaintiff's two NOIs collectively satisfied the requirements of MCL 600.2912b.[6] But a majority of the panel disagreed with the trial court's ruling that the AOMs were sufficient, concluding

[3] *Ligons v Crittenton Hosp*, unpublished order of the Court of Appeals, entered January 16, 2008 (Docket No. 278622).

[4] *Ligons v Crittenton Hosp*, 482 Mich 1005 (2008).

[5] *Ligons v Crittenton Hosp*, unpublished order of the Court of Appeals, entered March 2, 2009 (Docket No. 288793).

[6] *Ligons v Crittenton Hosp*, 285 Mich App 337, 343-349; 776 NW2d 361 (2009).

4

that neither AOM contained the required statement describing "[t]he manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice."[7] The majority reasoned that "it is insufficient to merely allege that the defendant's alleged negligence caused the injury," and the AOMs "contain[ed] no explanation regarding how Dr. Bauer's decision not to admit the decedent on January 22, 2002, or obtain appropriate consultations was the proximate cause of the decedent's death."[8] "[E]ven when read as a whole," the AOMs "establish[ed] no connection between the purpose of the consultations, or what condition they might have revealed, and the cause of the decedent's death," nor did they explain how a one-day delay in admitting Ligons resulted in death rather than recovery.[9]

Recognizing that the defective AOMs required dismissal of the case under *Kirkaldy v Rim*,[10] the Court of Appeals further held that dismissal in this case had to be with prejudice.[11] The Court of Appeals reasoned that, although filing a complaint and an AOM tolls the statutory limitations period pursuant to MCL 600.5856(a) until the AOM

---

[7] MCL 600.2912d(1)(d); *Ligons*, 285 Mich App at 349-351. The Court of Appeals partial dissent would have found the AOMs sufficient to comply with MCL 600.2912d, but acknowledged that the AOMs did not specify how the failure to admit Ligons to the hospital and obtain the appropriate consults on January 22, 2002, caused Ligons's death or how taking these actions could have prevented her death eight days later. *Ligons*, 285 Mich App at 360-361 (FITZGERALD, J., concurring in part and dissenting in part).

[8] *Id.* at 350 (majority opinion), citing *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 699 n 16; 684 NW2d 711 (2004).

[9] *Ligons*, 285 Mich App at 350.

[10] *Kirkaldy v Rim*, 478 Mich 581; 734 NW2d 201 (2007).

[11] *Ligons*, 285 Mich App at 354.

5

is successfully challenged,[12] tolling was unavailable here because plaintiff had not filed his complaint within the limitations period. Plaintiff filed his complaint after the limitations period expired, but within the saving period afforded him as a personal representative under MCL 600.5852. Under *Waltz v Wyse*,[13] statutes that toll periods of limitations or statutes of repose, such as MCL 600.5856(a), do not toll saving provisions.[14] The Court of Appeals concluded that no tolled time remained during which plaintiff could refile his suit after defendants successfully challenged his AOMs. Thus, dismissal with prejudice was required on statute-of-limitations-grounds.[15]

Finally, the Court of Appeals rejected plaintiff's argument that he should be permitted to amend his defective AOMs under the then existing version of MCR 2.118(A), which permitted the amendment of "pleadings." The Court noted that the term "pleading" was restrictively defined by MCR 2.110(A) to include only complaints, cross-claims, counterclaims, third-party complaints, answers to any of these documents, and replies to those answers. This list does not include "mandatory attachments" such as AOMs.[16] Finding no "positive authority suggesting that an affidavit of merit may be amended pursuant to MCR 2.118(A)," the Court concluded that "the only permissible remedy for a defective affidavit of merit is the one prescribed in *Kirkaldy*, which is

---

[12] *Id.* at 353-354, citing *Kirkaldy*, 478 Mich at 585-586.

[13] *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004).

[14] *Ligons*, 285 Mich App at 352, 354.

[15] *Id.* at 354.

[16] *Id.* at 355.

6

dismissal."[17]  Accordingly, the Court of Appeals reversed the trial court and remanded the case for entry of an order of dismissal with prejudice.[18]

Plaintiff applied to this Court for leave to appeal the Court of Appeals' decision. We granted leave and directed the parties to address the following issues: "(1) whether the plaintiff may amend his affidavits of merit in light of *Bush v Shabahang*, 484 Mich 156 [772 NW2d 272] (2009), and/or MCL 600.2301, and (2) whether the recent amendment of MCR 2.118 applies to the plaintiff's affidavits of merit."[19]

## II.  STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition.[20] This case involves questions of statutory interpretation, which we also review de novo.[21] We interpret court rules using the same principles that govern the interpretation of statutes.[22]  Our goal when interpreting and applying statutes or court rules is to give effect to the plain meaning of the text.  If the text is unambiguous, we apply the language as written without construction or interpretation.[23]

---

[17] *Id.*

[18] *Id*. at 356.

[19] *Ligons v Crittenton Hosp*, 486 Mich 977 (2010).

[20] *Haynes v Neshewat*, 477 Mich 29, 34; 729 NW2d 488 (2007).

[21] *Id.*

[22] *Marketos v American Employers Ins Co*, 465 Mich 407, 412-413; 633 NW2d 371 (2001).

[23] See *Haynes*, 477 Mich at 35; *Marketos*, 465 Mich at 413.

## III. ANALYSIS

## A. INTERPRETATION AND APPLICATION OF MCL 600.2912d

MCL 600.2912d was enacted in 1986 and amended in 1993 as an element of broad tort reforms established by the Legislature.[24] In part, the legislation placed "enhanced responsibilities" on medical malpractice plaintiffs.[25] MCL 600.2912d(1) requires the following:

> Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under [MCL 600.2169].[26] The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and *shall contain a statement of each of the following*:
>
> (a) The applicable standard of practice or care.
>
> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.
>
> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

---

[24] 1986 PA 178; 1993 PA 78; see *Scarsella v Pollak*, 461 Mich 547, 548; 607 NW2d 711 (2000); *Solowy v Oakwood Hosp Corp*, 454 Mich 214, 228; 561 NW2d 843 (1997).

[25] *Solowy*, 454 Mich at 228.

[26] MCL 600.2169 governs the qualifications of expert witnesses in medical malpractice actions.

(d) *The manner in which* the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. [Emphasis added.]

MCL 600.2912d(2) and (3) extend the time during which an AOM may be filed under certain circumstances:

(2) Upon motion of a party for good cause shown, the court in which the complaint is filed may grant the plaintiff or, if the plaintiff is represented by an attorney, the plaintiff's attorney an additional 28 days in which to file the affidavit required under subsection (1).

(3) If the defendant in an action alleging medical malpractice fails to allow access to medical records within the time period set forth in [MCL 600.2912b(6)], the affidavit required under subsection (1) may be filed within 91 days after the filing of the complaint.

In *Scarsella v Pollak*,[27] this Court addressed the consequences of a plaintiff's failure to file an AOM with the complaint as required by the statute. We stressed the Legislature's "'mandatory and imperative'" language:[28] MCL 600.2912d(1) requires that a plaintiff "*shall* file with the complaint an affidavit of merit . . . ."[29] In light of this legislative requirement, we held that "'for statute of limitations purposes in a medical malpractice case, the mere tendering of a complaint without the required affidavit of merit is insufficient to commence the lawsuit.'"[30] We rejected the plaintiff's argument that he should have been permitted to amend his complaint by appending an untimely

---

[27] *Scarsella*, 461 Mich 547.

[28] *Scarsella*, 461 Mich at 549, quoting *Scarsella v Pollak*, 232 Mich App 61, 64; 591 NW2d 257 (1998).

[29] Emphasis added.

[30] *Scarsella*, 461 Mich at 549, quoting *Scarsella*, 232 Mich App at 64.

9

AOM, which would have been related back to the time the complaint was filed under MCR 2.118(D),[31] because permitting such amendment would have "'effectively repeal[ed] the statutory affidavit of merit requirement'":[32]

> "[M]edical malpractice plaintiffs could routinely file their complaints without an affidavit of merit, in contravention of the court rule and the statutory requirement, and 'amend' by supplementing the filing with an affidavit at some later date. This, of course, completely subverts the requirement of MCL 600.2912d(1) . . . that the plaintiff 'shall file with the complaint an affidavit of merit,' as well as the legislative remedy of MCL 600.2912d(2) . . . , allowing a twenty-eight-day extension in instances where an affidavit cannot accompany the complaint."[33]

In other words, *Scarsella* established that, when a plaintiff "wholly omits to file the affidavit required by MCL 600.2912d(1)," "the filing of the complaint is ineffective, and does not work a tolling of the applicable period of limitation."[34] When the untolled period of limitations expires before the plaintiff files a complaint accompanied by an AOM, the case must be dismissed with prejudice on statute-of-limitations grounds.[35]

---

[31] At the time *Scarsella* was decided, MCR 2.118(D) provided:

> Except to demand a trial by jury under MCR 2.508, an amendment relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading.

[32] *Scarsella*, 461 Mich at 550, quoting *Scarsella*, 232 Mich App at 65.

[33] *Scarsella*, 461 Mich at 550, quoting *Scarsella*, 232 Mich App at 65.

[34] *Scarsella*, 461 Mich at 553.

[35] *Id.* at 551-552.

10

Dismissal without prejudice is proper, however, if the untolled limitations period has not yet expired.[36]

The issue whether a timely filed yet defective AOM tolled the limitations period was resolved in *Kirkaldy*. *Kirkaldy* observed that, under MCL 600.5856(a),[37] MCL 600.2912d, and *Scarsella*, "the period of limitations is tolled when a complaint and affidavit of merit are filed and served on the defendant."[38] Distinguishing a wholly absent AOM from a potentially defective but timely filed AOM, we stressed the holding in *Saffian v Simmons*[39] that "'when an affidavit is filed, it is presumed valid. It is only in subsequent judicial proceedings that the presumption can be rebutted.'"[40] Accordingly, *Kirkaldy* held:

> [A] complaint and affidavit of merit toll the period of limitations until the validity of the affidavit is successfully challenged in "subsequent judicial proceedings." Only a successful challenge will cause the affidavit to lose its presumption of validity and cause the period of limitations to resume running.

---

[36] *Id.* (discussing the result in *Gregory v Heritage Hosp*, decided sub nom *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26; 594 NW2d 455 [1999]).

[37] MCL 600.5856 provides, in pertinent part:

> The statutes of limitations or repose are tolled in any of the following circumstances:
>
> (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.

[38] *Kirkaldy*, 478 Mich at 585.

[39] *Saffian v Simmons*, 477 Mich 8; 727 NW2d 132 (2007).

[40] *Kirkaldy*, 478 Mich at 586, quoting *Saffian*, 477 Mich at 13.

Thus, if the defendant believes that an affidavit is deficient, the defendant must challenge the affidavit. If that challenge is successful, the proper remedy is dismissal without prejudice. *Scarsella*, [461 Mich] at 551-552. The plaintiff would then have whatever time remains in the period of limitations within which to file a complaint accompanied by a conforming affidavit of merit.[41]

In *Waltz*, this Court clarified that MCL 600.5856, by its terms, tolls only periods of limitations or statutes of repose.[42] A saving statute is neither a statute of limitations providing a limitations period nor a statute of repose; rather, it is "an '*exception* to the statute of limitations'" that allows "commencement of a wrongful death action as many as three years after the applicable statute of limitations has expired."[43] In other words, once the limitations period has run, tolling is no longer available, even if a saving statute would still allow commencement of the action.

Read together, the cases establish four points necessary to resolving the case currently before us. First, a plaintiff's failure to file a timely AOM *or* to file a timely AOM that satisfies the requirements of MCL 600.2912d(1) generally results in the dismissal of the case.[44] Second, that dismissal must be without prejudice unless other

---

[41] *Kirkaldy*, 478 Mich at 586.

[42] *Waltz*, 469 Mich at 650.

[43] *Id.* at 650-651, quoting *Lindsey v Harper Hosp*, 455 Mich 56, 65; 564 NW2d 861 (1997); see also *Miller v Mercy Mem Hosp*, 466 Mich 196, 202; 644 NW2d 730 (2002) ("[MCL 600.5852] is a saving statute, not a statute of limitations.").

[44] Although Justice CAVANAGH discusses *Bush* in his dissent, he does not address why dismissal was inappropriate here given *Kirkaldy*'s holding that dismissal is the appropriate remedy for a defective AOM.

grounds for the dismissal exist, such as the expiration of the limitations period.[45] Third,

the timely filing of a defective AOM with the complaint tolls the limitations period unless

[45] Regardless of the fact that a provision for "mandatory dismissal with prejudice" is unnecessary in MCL 600.2912(d) because the statute of limitations necessitates dismissal, Justice HATHAWAY's dissent proceeds with a misguided and fruitless search for legislative direction that a defective AOM requires "mandatory dismissal with prejudice." Unsurprisingly, she finds no such mandate, concluding instead that the Legislature rejected "mandatory dismissal" in light of its interpretation of a provision of the initial notice legislation that the Legislature never adopted.

Although "actions of the Legislature in considering various alternatives in language in statutory provisions before settling on the language actually enacted" may constitute a legitimate form of legislative history, *In re Certified Question from the United States Court of Appeals for the Sixth Circuit*, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003), Justice HATHAWAY's use of it here exemplifies the shortcomings inherent in that approach. To reasonably discern legislative intent from rejected language, the rejected provision should be considered as a whole, rather than piecemeal as Justice HATHAWAY does by only looking at the first sentence of the provision. The full provision stated:

> Except as otherwise provided in this subsection, in an action alleging medical malpractice, the court shall dismiss a claim not included in the notice required under [MCL 600.2912f]. This subsection does not apply to a claim that results from previously unknown information gathered during discovery. [Format altered from strikethrough/insert format to show language as proposed.]

On this same issue, Justice MARKMAN observed the following in *Bush*:

> As an initial matter, this seems entirely unrelated to the statute of limitations under which dismissal is granted. The Legislature's rejection of an unrelated provision can hardly be used to alter the clear meaning of a statute. It seems far more reasonable to conclude that the Legislature rejected this provision in favor of [MCL 600.2912b(3)], which provides for similar treatment of the same subject matter: undiscovered claims. . . . How can [Justice HATHAWAY] draw an informed conclusion concerning legislative history from a provision *never* enacted without even considering a provision that *has* been enacted and actually substituted for the never-

and until the court finds the AOM defective. Fourth, only limitations periods may be tolled; the timely filing of a defective AOM cannot toll a saving period.[46]

### B. THE AFFIDAVITS OF MERIT WERE INSUFFICIENT

As noted in part III(A), MCL 600.2912d(1) sets forth several requirements for affidavits of merit: (1) a certification that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice, (2) the applicable standard of practice or care, (3) the health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice, (4) the actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care, and (5) *the manner in which* the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. The failure to include any of the required information renders the affidavit of merit insufficient.

---

enacted provision? [*Bush*, 484 Mich at 203-204 (MARKMAN, J., dissenting).]

[46] We decline plaintiff's invitation to overrule the prior decisions of this Court instead of adhering to the doctrine of stare decisis. "Stare decisis means 'To abide by, or adhere to, decided cases.'" *Robinson v Detroit*, 462 Mich 439, 463 n 20; 613 NW2d 307 (2000), quoting Black's Law Dictionary (rev 4th ed), p 1577. As both this Court and the United States Supreme Court have recognized, "[s]tare decisis is generally 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Robinson*, 462 Mich at 463, quoting *Hohn v United States*, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998). Plaintiff has not argued why we should veer away from the stare decisis course, and we decline to revisit the body of caselaw involved here.

Plaintiff's AOMs failed to provide any statement of the manner in which the breach of the standard of care was the proximate cause of the injury alleged. Dr. George Sternbach's AOM provided only that "[a]s a direct and proximate cause of the imprudent acts and omission committed by the individuals identified herein, Edris Ligons, died." Dr. Fred Thomas's AOM provided only: "It is my opinion that had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate consults on January 22, 2002, as outlined in Dr. Sternbach's affidavit that Edris Ligons would not have died."[47] We have often said that it is insufficient to simply state the result when required to state the manner in which there was a breach: The answer to "*How* was the standard of care breached?" is never "The standard of care was breached."[48] Similarly, answering the question "How was the breach the proximate cause of the injury?" requires more than "The breach caused the injury." In other words, the "'mere correlation between alleged malpractice and an injury is insufficient to show proximate cause.'"[49] Contrary to the dissents' conclusions, this analysis does not require a

---

[47] Notably, Dr. Thomas's AOM did not include any statements regarding the applicable standard of practice or care, his opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice, or the actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care. Therefore, regardless of his statement of proximate cause, Dr. Thomas's AOM was statutorily deficient.

[48] See *Roberts*, 470 Mich at 696 n 14; *Boodt v Borgess Med Ctr*, 481 Mich 558, 560-561; 751 NW2d 44 (2008).

[49] *Swanson v Port Huron Hosp (On Remand)*, 290 Mich App 167, 176; ___ NW2d ___ (2010) (citation omitted).

15

heightened level of specificity; rather, it simply gives meaning to the level of specificity required by the statute itself. The Legislature requires a statement not just that a breach caused the injury, but the *manner in which* the breach caused the caused the injury.[50]

In this case, even the Court of Appeals dissent acknowledged that the AOMs were silent regarding how the defendants' actions or inactions caused Ligons's death. A statement answering how is precisely what MCL 600.2912d(1)(d) requires, and this case demonstrates the importance of that requirement. Ligons's colon was perforated by a doctor (who is not a defendant here) eight days before she went to the hospital. She then refused to be admitted to the hospital, only to come back a day later, when the perforated

---

[50] We also note that the dissents' interpretations render superfluous the words "manner in which" as used in MCL 600.2912d(1)(d). Simply stated, the dissents do not read MCL 600.2912d(1)(d) as requiring a statement of "[t]he manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." Instead, the statute is read only to require a statement that "the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." Because the dissents' reading of MCL 600.2912d(1)(d) renders the words "manner in which" meaningless, it must be rejected. See *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 714; 664 NW2d 193 (2003); see also *Grimes v Dep't of Transp*, 475 Mich 72, 89; 715 NW2d 275 (2006). Although Justice HATHAWAY insists that "[o]ur courts have consistently interpreted the word 'manner' . . . as allowing for a single word description such as 'homicide,' 'suicide,' or 'accident,'" *post* at 6, it is noteworthy that she does not cite a single case that held that the requirement of MCL 600.2912d(1)(d) to state "[t]he *manner* in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice" can be satisfied by a single word description such as "malpractice" or even by "a similarly succinct description such as 'the malpractice caused the death,'" *post* at 7. This is because no case has ever so held inasmuch as such a holding would be inconsistent with the explicit directive of MCL 600.2912d(1)(d) to state "[t]he *manner in which* the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." (Emphasis added.) Merely stating that "the malpractice caused the death" does not explain the *manner in which* the malpractice caused the death.

16

colon was discovered. With so many different parties and procedures involved, as well as Ligons's own medical history, plaintiff must state how defendants' alleged negligence in not diagnosing the perforated colon one day earlier was the proximate cause of Ligons's death. Plaintiff failed to do so, as required by MCL 600.2912d(1)(d); therefore, the AOMs were statutorily deficient.[51]

## C. A PLAINTIFF MAY NOT AMEND A DEFECTIVE AFFIDAVIT OF MERIT

Plaintiff nonetheless argues that MCR 2.112, MCR 2.118, MCL 600.2301, and *Bush v Shabahang*,[52] permit retroactive amendment of defective AOMs. We are not persuaded that these authorities compel that conclusion, one that is directly contrary to the rules of *Scarsella* and *Kirkaldy*, which call for dismissal in the event of an absent or defective AOM.[53]

---

[51] Justice HATHAWAY argues that the statements contained in the NOI can satisfy the AOM requirements. See *post* at 7-8. This argument fails to appreciate, however, that MCL 600.2912d(1)(d) very clearly states that the AOM "*shall contain* a statement" regarding "[t]he manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." (Emphasis added.) It does not state that either the NOI or the AOM shall contain such a statement; it states that the AOM *shall* contain such a statement. Therefore, whether the NOI contains such a statement is irrelevant to the question whether the AOM contains the statements required by MCL 600.2912d(1).

[52] *Bush*, 484 Mich 156.

[53] Contrary to Justice HATHAWAY's contention, see *post* at 12-13, *Kirkaldy* is not significantly distinguishable from the instant case. *Kirkaldy* held that the appropriate remedy for a defective AOM is dismissal. The fact that the defects in the affidavits of merit are not identical does not change the fact that the appropriate remedy remains dismissal.

## 1. AN AFFIDAVIT OF MERIT IS NOT A "PLEADING" THAT MAY BE AMENDED UNDER THE APPLICABLE VERSION OF MCR 2.118

Plaintiff urges that amendment should be permitted under the version of MCR 2.118 in effect at the time this case was pending in the trial court.[54] MCR 2.118 governs amended and supplemental pleadings. Both the prior and current versions of MCR 2.118(A)(1) permit a party to "amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party . . . ."[55] MCR 2.118(A)(2) further provides that "[e]xcept as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." Former MCR 2.118(D), which governed the relation back of amendments, provided, "An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading."[56]

By its terms, former MCR 2.118 applied only to a "pleading." MCR 2.110(A) defines "pleading" for purposes of the Michigan Court Rules restrictively to include "*only*: (1) a complaint, (2) a cross-claim, (3) a counterclaim, (4) a third-party complaint, (5) an answer to a complaint, cross-claim, counterclaim, or third-party complaint, and (6)

---

[54] As discussed later in this opinion, MCR 2.112 and MCR 2.118 were amended, effective May 1, 2010. 485 Mich ___ (order entered February 16, 2010).

[55] This one-time, automatic ability to revise may be exercised "within 14 days after serving the pleading if it does not require a responsive pleading." MCR 2.118(A)(1).

[56] Former MCR 2.118(D) (version effective January 1, 2001, through April 30, 2010, see 463 Mich at clvii [2000]; 485 Mich at ____ [order entered February 16, 2010]).

a reply to an answer. *No other form of pleading is allowed*."[57]  As with statutes, when a court rule "specifically defines a given term, that definition alone controls."[58]  An AOM, even if required to be appended to a complaint, is not included in this restrictive definition of a "pleading."  Plaintiff relies heavily on a statement in *Barnett v Hidalgo*,[59] which described an AOM as "part of the pleadings" in determining that an AOM is "generally admissible as an adoptive admission[.]"  But plaintiff fails to appreciate the context in which the statement was made: describing a document as "part" of the pleadings when addressing an evidentiary issue does not turn the document into a pleading for purposes of MCR 2.118(D) if it does not meet the definition in MCR 2.110(A).[60]  Indeed, elsewhere *Barnett* clearly referred to the AOM as distinct from the complaint, stating that AOMs "are required to accompany a complaint . . . ."  *Id.* at 160.  Under MCR 2.110(A)(1), for purposes of the court rules it is the "complaint" itself that

---

[57] MCR 2.110(A) (emphasis added; formatting altered).

[58] *Haynes*, 477 Mich at 35.

[59] *Barnett v Hidalgo*, 478 Mich 151, 161; 732 NW2d 472 (2007).

[60] Further, the *Barnett* Court's conclusion that an AOM may be offered at trial as an admission was based on the following logic: an AOM is a "sworn statement" regarding the issues addressed and "by filing the affidavit of merit with the court, [a] plaintiff manifests 'an adoption or belief in its truth.'"  *Barnett*, 478 Mich at 160-161, quoting MRE 801(d)(2)(B), which permits admission of "a statement of which the party has manifested an adoption or belief in its truth."  *Barnett* also cited former MRPC 3.3(a)(4), which refered to a lawyer's general duty to refrain from offering "evidence that the lawyer knows to be false."  *Id.* at 161; see 488 Mich ___, ___ (order entered October 26, 2010).  It supported this logic, in turn, not by characterizing an AOM as a pleading, but by reference to other cases permitting the introduction of third-party affidavits—without regard to whether they were filed with the pleadings—as adoptive admissions.  *Id.* at 161 n 4.

constitutes a "pleading," not the complaint and any document accompanying it. *Barnett* neither held nor relied on the premise that an AOM is a pleading for purposes of the rule permitting amendment of pleadings, MCR 2.118

Plaintiff also argues that the Court's opinion in *Scarsella* compels the conclusion that an AOM is a pleading. He stresses the *Scarsella* Court's holding that "'the mere tendering of a complaint without the required affidavit of merit is insufficient to commence the lawsuit.'"[61] Then plaintiff notes that, pursuant to MCL 600.1901, which applies generally to all civil actions, "[a] civil action is commenced by filing a complaint with the court." And he similarly notes that the general civil complaint tolling statute cited in *Scarsella*, MCL 600.5856(a), permits tolling "[a]t the time the complaint is filed . . . ." Because *Scarsella* held that a medical malpractice action is not commenced—and tolling does not occur—if the complaint is not accompanied by an AOM, plaintiff reasons that, for *Scarsella* to be consistent with MCL 600.1901 and MCL 600.5856(a), an AOM must be "*part and parcel*" of the complaint.

But *Scarsella*, like *Barnett*, did not rule that an AOM is a complaint or is "part and parcel" of the complaint. Rather, the Court consistently referred to the complaint and AOM as distinct documents. For example, the Court noted that "'medical malpractice plaintiffs must file *more than* a complaint; they "shall file *with the complaint* an affidavit of merit . . . .""'"[62] Importantly, *Scarsella* clarified that commencement of a medical

---

[61] *Scarsella*, 461 Mich at 549, quoting *Scarsella*, 232 Mich App at 64.

[62] *Scarsella*, 461 Mich at 549, quoting *Scarsella*, 232 Mich App at 64, quoting MCL 600.2912d(1) (emphasis added).

malpractice action is not governed solely by the general statutes applicable to civil suits. Rather, medical malpractice suits are governed in detail by specific statutes unique to this area of law. In contrast to the generic rule that a civil action may be commenced through the mere filing of a complaint, MCL 600.2912b(1) establishes that, generally, "a person shall not commence an action alleging medical malpractice . . . unless the person has given the [defendants] written notice under this section not less than 182 days before the action is commenced."[63] Similarly, as *Scarsella* held, pursuant to MCL 600.2912d(1) a medical malpractice claimant must file not just a complaint, but "shall file *with the complaint* an affidavit of merit . . . ."[64] A defendant, moreover, is not simply required to file an answer to the complaint, but must also file an affidavit of meritorious defense—the counterpart to a plaintiff's AOM—within 91 days after the plaintiff files an AOM.[65]

These specific statutes governing medical malpractice actions, which "appl[y] to the more narrow realm of circumstances," prevail over the more general rules applicable to all civil actions.[66] Accordingly, it does not necessarily follow that, simply because other civil plaintiffs may commence suit by filing a complaint, an AOM *is* a complaint—

---

[63] And see *Boodt*, 481 Mich at 562-563, which observed that a plaintiff "cannot commence an action before he or she files a notice of intent that contains all the information required under [MCL 600.2912b(4)]" and that, if the plaintiff fails to do so, a subsequently filed complaint and affidavit of merit do not toll the period of limitations.

[64] Emphasis added.

[65] MCL 600.2912e(1). Instead of answering, a medical malpractice defendant also has a unique alternative option to "file with the court an affidavit certifying that he or she was not involved, either directly or indirectly, in the occurrence alleged in the action." MCL 600.2912c(1).

[66] *Miller v Allstate Ins Co*, 481 Mich 601, 613; 751 NW2d 463 (2008).

or is part and parcel of a complaint—particularly for purposes of applying the Michigan Court Rules.[67]

Permitting amendment of a deficient AOM also runs directly counter to the statutes governing medical malpractice suits, particularly MCL 600.2912d. By its terms, MCL 600.2912d requires that a plaintiff obtain a qualified expert willing to review the medical records and certify that the claim has merit because, in the expert's opinion, each defendant breached the applicable standard of practice or care, there were actions the defendant should have taken or omitted in order to comply with the standard, and the breach was the proximate cause of the injury alleged in the presuit notice.[68] Consistently with its purpose to certify merit at the outset of the case, MCL 600.2912d(1) directs that the plaintiff "shall file" the AOM "with the complaint." If the plaintiff is unable to comply with this mandate, the statute provides two alternatives for recourse: MCL 600.2912d(2) permits the court to grant an additional 28 days in which to file the AOM "[u]pon motion of a party for good cause shown," and MCL 600.2912d(3) affords the plaintiff "91 days after the filing of the complaint" to file the AOM if the defendant failed "to allow access to medical records within the time period set forth in [MCL 600.2912b(6)]."

---

[67] Plaintiff also cites *Jackson v Detroit Med Ctr*, 278 Mich App 532, 543-544; 753 NW2d 635 (2008), in which the Court of Appeals held that the trial court had discretion to decide whether an AOM could be amended under MCR 2.118(A). The *Jackson* plaintiff sought to amend an AOM that was *sufficient* under MCL 600.2912d(1) in order to assert liability under new theories. *Id.* With regard to *deficient* AOMs such as those at issue here, *Jackson* reiterated that, under *Kirkaldy* and *Scarsella*, the proper remedy is dismissal. *Id.* at 543.

[68] See MCL 600.2912d(1); *Solowy*, 454 Mich at 228.

Accordingly, the statute clearly conveys that the AOM must be provided within the relevant time frames. For this reason, permitting a plaintiff to correct deficiencies in the AOM through amendment as a matter of course within 14 days after service of a responsive pleading, MCR 2.118(A)(1), and indefinitely thereafter by leave of the court or consent of the adverse party, MCR 2.118(A)(2), would directly conflict with the legislative remedies provided in MCL 600.2912d(2) and (3), which allow a plaintiff who is unable to submit a conforming AOM with the complaint an additional 28 or 91 days, respectively, to complete and submit the AOM. Just as the *Scarsella* Court reasoned in rejecting retroactive "amendment" of untimely AOMs under MCR 2.118, permitting amendment of a deficient AOM would similarly subvert the AOM statute by allowing plaintiffs to routinely file complaints without conforming AOMs.[69]

Because permitting amendment of a defective AOM runs counter to the established statutes, court rules, and cases governing this area of law, we hold that a plaintiff may not amend a deficient AOM under the version of MCR 2.118 in effect during the pendency of this suit in the trial court.

### 2. MCL 600.2301 AND *BUSH v SHABAHANG* DO NOT AUTHORIZE AMENDMENT OF AN AFFIDAVIT OF MERIT

Next, plaintiff urges that we permit amendment of deficient AOMs under MCL 600.2301 and this Court's 2009 decision in *Bush*.[70] But retroactive amendment of a deficient AOM has never been authorized under any court rule or statute, and as

---

[69] Compare *Scarsella*, 461 Mich at 550.

[70] *Bush*, 484 Mich 156.

explained in part III(C)(1), would actually be contrary to the specific statutory scheme governing medical malpractice actions. This Court has long recognized that an attachment to a complaint or pleading is neither a "process" nor a "proceeding" under MCL 600.2301.[71] In fact, this Court noted in 1892 that there was no statutory support for allowing amendment of an affidavit on the ground that it was a process or a proceeding:

> There is no statute now in force permitting amendments to attachment affidavits, and such amendments have never been deemed admissible under [How Stat] 7631, which provides that "the court in which

---

[71] Even if an affidavit of merit is part of a "proceeding" and subject to amendment under MCL 600.2301, *Bush* held that MCL 600.2301 requires an initial good-faith attempt to comply with the statutory requirements. Plaintiff did not do so in this case. In *Bush*, 484 Mich at 183-184, the Court held that the defendant's response to the plaintiff's NOI, stating "'the current medical condition of Gary Bush was not in any way caused or contributed by the activities of Dr. Shabahang,'" was "utterly lacking in a good-faith attempt to comply." The defendant's statement demonstrated a lack of a good-faith attempt to comply because it merely stated in a conclusory fashion that the defendant's alleged negligence did not cause the plaintiff's injury. Indeed, every justice in *Bush* agreed on this point. See *id*. at 182-184; *id*. at 205-206 (MARKMAN, J., dissenting). Similarly, plaintiff's statement here demonstrated a lack of a good-faith attempt to comply because it merely stated in a conclusory fashion that defendants' negligence caused Ligons's death. It did not at all explain the manner in which defendants' negligence caused her death. Therefore, we respectfully disagree with Justice CAVANAGH's assertion that "the contents of the AOM do not evidence an utter lack of a good-faith attempt to comply with the proximate-causation requirement of MCL 600.2912d(1)(d)." *Post* at 6.

Furthermore, contrary to Justice CAVANAGH's contention, "defendant's substantial rights would be affected by permitting" MCL 600.2301 to cure what he refers to as the "technical defect in the AOM . . . ." *Post* at 7. MCL 600.2912d(1)(d) very clearly states that a medical malpractice plaintiff "*shall* file with the complaint an affidavit of merit" and that this affidavit "*shall* contain a statement" regarding "[t]he manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." (Emphasis added.) Allowing a medical malpractice plaintiff to proceed in an action against a defendant even though the plaintiff did not provide such an affidavit affects the defendant's substantial right to have the law mean what it says.

24

any action shall be pending shall have power to amend any process, pleading, or proceeding in such action, either in form or substance, for the furtherance of justice.[72]

The *Bush* Court's application of MCL 600.2301 to a medical malpractice NOI was rooted in the Legislature's 2004 amendment of MCL 600.5856(c), the notice-tolling statute, and does not apply to AOMs. Unlike NOIs, which give notice to defendants, AOMs are meant to weed out frivolous cases before they are ever filed. Applying *Bush* beyond the scope of the 2004 amendment of MCL 600.5856(c) and NOIs to AOMs would be an unwarranted expansion of its focus on the notice-tolling statute, would free the opinion from its statutory moorings, would frustrate the purpose of the AOM requirement, and would create unnecessary conflict with existing caselaw, such as *Kirkaldy*, which *Bush* did not overrule. We therefore decline to apply the rationale of *Bush* beyond its limited statutory focus.

### 3. THE NEW VERSIONS OF MCR 2.112 AND MCR 2.118 ARE NOT APPLICABLE

Finally, we address plaintiff's argument that he should now be permitted to amend his AOMs in light of the 2010 amendments of MCR 2.112 and MCR 2.118. In addition to mandating that a party challenge an allegedly defective AOM or affidavit of meritorious defense within 63 days of service, MCR 2.112(L)(2)(b) now states, "An affidavit of merit or meritorious defense may be amended in accordance with the terms and conditions set forth in MCR 2.118 and MCL 600.2301." In turn, MCR 2.118(D) now states, in relevant part, "In a medical malpractice action, an amendment of an affidavit of

---

[72] *Freer v White*, 91 Mich 74, 76; 51 NW 807 (1892).

25

merit or affidavit of meritorious defense relates back to the date of the original filing of the affidavit."[73] The February 16, 2010, order adopting the amendments unequivocally stated that they became effective May 1, 2010, long after the complaint and the AOMs in this case were filed and, indeed, after the Court of Appeals resolved the case and plaintiff's application for leave to appeal was filed in this Court.[74] Because this Court explicitly ordered that the amended rules have prospective effect, we will not apply the rules retroactively at plaintiff's request. Moreover, as defendants argue, full retroactive application of the rules is impossible at this late stage and would result in prejudice to defendants; defendants cannot go back in time and comply with the new requirement that, to challenge an AOM at all, they must do so within 63 days of service. Accordingly, retroactive application of the rules would render defendants' challenge to the AOMs ineffective and afford them no opportunity to renew their arguments concerning their deficiency or to oppose any motion plaintiff might bring for amendment at the court's discretion under MCR 2.118(A)(2). A newly adopted court rule will not be applied to pending actions if a "party acts, or fails to act, in reliance on the prior rules and the party's action or inaction has consequences under the new rules that were not present under the old rules."[75] In other words, amended court rules will not apply retroactively if

---

[73] The substance of the amendments is not at issue here.

[74] See *Ligons*, 486 Mich at 978 (CORRIGAN, J., dissenting in part).

[75] *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 337; 602 NW2d 596 (1999) (quotation marks and citation omitted).

26

compliance with the newly prescribed time limits is impossible.[76]  We therefore decline to apply the amended versions of MCR 2.112 and MCR 2.118 here.

## D.  DISMISSAL WITH PREJUDICE WAS REQUIRED

Plaintiff's case was dismissed with prejudice because the two-year statutory limitations period provided in MCL 600.5805(6) for his medical malpractice action expired before his AOMs were deemed defective; therefore, no tolling was available to him upon his filing the complaint under MCL 600.5856(a).  The alleged malpractice by defendants occurred on January 22, 2002.  Accordingly, the two-year limitations period expired on January 22, 2004.  If the suit had been commenced before January 22, 2004, the limitations period would have been tolled when the complaint was filed with the accompanying AOMs.  But no suit was filed within the limitations period, so no tolling was available.

Instead, plaintiff filed suit within the saving period afforded him under MCL 600.5852, which permits the personal representative of the decedent's estate to commence an action "at any time within 2 years after letters of authority are issued although the period of limitations has run" as long as commencement is "within 3 years after the period of limitations has run."  Plaintiff was appointed personal representative on February 22, 2005.[77]  He had until January 22, 2007—three years after the two-year period of limitations expired on January 22, 2004—in which to file suit during the saving

---

[76] See *Solosth v Pere Marquette R Co*, 255 Mich 62, 66; 237 NW 554 (1931).

[77] Plaintiff is the second personal representative of Ligons's estate.

27

period. He filed his complaint and AOMs on April 7, 2006. Although plaintiff filed suit during the saving period, because the limitations period had expired, there was nothing left to toll under MCL 600.5856(a) when he filed the complaint even though it was accompanied by AOMs. For these reasons, the Court of Appeals correctly dismissed plaintiff's case with prejudice.

## IV. CONCLUSION

Pursuant to the plain and controlling language of MCR 2.110(A), the applicable version of MCR 2.118, MCL 600.5856, MCL 600.2912d, and this Court's decisions in *Scarsella*, *Kirkaldy*, and *Waltz*, we hold that a defective AOM may not be retroactively amended and that the proper response to a defective AOM is dismissal. Although the timely filing of a defective AOM tolls the limitations period until a court finds the AOM defective, an AOM filed during a saving period after the limitations period has expired tolls nothing, as the limitations period has run and the saving period may not be tolled. In this case, because the limitations period had run before the complaint was filed, plaintiff cannot amend his defective AOMs retroactively. Given that the saving period has expired, plaintiff's case had to be dismissed with prejudice. The judgment of the Court of Appeals is affirmed.

Brian K. Zahra
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly

28

STATE OF MICHIGAN

SUPREME COURT

DUJUAN LIGONS, Personal Representative
of the Estate of EDRIS LIGONS,

        Plaintiff-Appellant,

v                                  No. 139978

CRITTENTON HOSPITAL, a/k/a
CRITTENTON HOSPITAL MEDICAL
CENTER, DAVID BRUCE BAUER, M.D.,
and ROCHESTER EMERGENCY GROUP,
P.C.,

        Defendants-Appellees.

_____

CAVANAGH, J. (*dissenting*).

I respectfully dissent from the majority's decision to affirm the Court of Appeals'

judgment dismissing plaintiff's case with prejudice.  In my view, MCL 600.2301 should

apply when the contents of an affidavit of merit (AOM) are deficient.  Accordingly, I

would remand this case to the trial court for consideration under MCL 600.2301.

For the reasons stated in Justice MARILYN KELLY's dissent in *Roberts v Mecosta*

*Co Gen Hosp (After Remand)*, 470 Mich 679, 702-714; 684 NW2d 711 (2004) (MARILYN

KELLY, J., dissenting), I agree with Justice HATHAWAY'S conclusion in this case that a

heightened level of specificity in the contents of an AOM is not required.  While Justice

MARILYN KELLY's dissent examined MCL 600.2912b, addressing the contents of a

notice of intent to sue (NOI), I believe that her analysis is persuasive as it relates to the

AOM statute, MCL 600.2912d.

As the *Roberts* dissent explained, it is this Court's duty to determine the Legislature's intent, which begins with an examination of a statute's language. *Roberts*, 470 Mich at 705 (MARILYN KELLY, J., dissenting). Because the "Legislature knows what phrasing to use when it intends to require extensive detail," it is noteworthy that the Legislature did not "explicitly mandate such specificity" in the AOM context. *Id.* at 709. Specifically, like the NOI statute, MCL 600.2912d only requires a "statement" regarding the alleged manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.[1] Thus, as Justice HATHAWAY notes, the AOM statute does not expressly require a heightened level of specificity, as do other statutes. See *Roberts*, 470 Mich at 708-709 (MARILYN KELLY, J., dissenting) (examining other statutes that require "detailed," "complete," or "full" statements, or that require statements made "with specificity"). Further, because the purpose of the AOM statute is to deter frivolous medical malpractice claims by requiring a certification that a claim is

---

[1] MCL 600.2912d(1) states in relevant part:

> [T]he plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under [MCL 600.2169]. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> * * *
>
> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

2

valid, a general assertion of the items required by the AOM statute is sufficient to lend professional credence to the claim's legitimacy and thus is likely sufficient to meet the statute's apparent intent. See *id*. at 707-708. Therefore, I agree with Justice HATHAWAY that a high level of specificity is not required in the AOM context.

Nevertheless, assuming arguendo that the AOM[2] in this case was deficient, I believe that MCL 600.2301[3] should apply to allow a cure of the alleged deficiency within the AOM. To begin with, applying MCL 600.2301 would not conflict with MCL 600.2912d, when the latter is read as a whole. Indeed, as recognized by Justice HATHAWAY, the AOM statute does not expressly provide a penalty for deficiencies within the contents of an AOM. And, notably, the allowances of additional time to file an AOM in MCL 600.2912d(2) and (3) do not explicitly preclude amending or disregarding defects within the contents of an AOM.[4] Instead, those provisions merely

---

[2] Although plaintiff filed two AOMs in this case, because I believe that, at a minimum, MCL 600.2301 would permit the alleged defects in Dr. George Sternbach's AOM to be cured, I will refer to AOM in the singular.

[3] MCL 600.2301 provides:

> The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.

[4] MCL 600.2912d provides, in relevant part:

> (2) Upon motion of a party for good cause shown, the court in which the complaint is filed may grant the plaintiff or, if the plaintiff is represented by an attorney, the plaintiff's attorney an additional 28 days in which to file the affidavit required under subsection (1).

3

provide a plaintiff additional time in which to file the initial AOM and, thus, do not address curing an arguably defective AOM. And while I continue to adhere to my position in *Kirkaldy v Rim*, 478 Mich 581, 586-587; 734 NW2d 201 (2007) (CAVANAGH, J., concurring), as Justice HATHAWAY suggests, allowing a defect within an AOM to be cured under MCL 600.2301 would simply provide an alternative remedy to that of *Kirkaldy*, in which the majority opined that the remedy for a successful challenge to a deficient AOM is dismissal without prejudice, *id*. at 586 (majority opinion). Accordingly, I believe that MCL 600.2301 should apply.[5]

Notably, the aim of MCL 600.2301 is to """"abolish technical errors in proceedings and to have cases disposed of as nearly as possible in accordance with the substantial rights of the parties."""" *Boodt v Borgess Med Ctr*, 481 Mich 558, 569; 751 NW2d 44 (2008) (CAVANAGH, J., dissenting), quoting *Gratiot Lumber & Coal Co v Lubinski*, 309 Mich 662, 668-669; 16 NW2d 112 (1944). And, by its terms, MCL 600.2301 applies to any "process" or "proceeding" before a court, allowing amendment, in either form or substance, at "any time" before judgment is rendered. See, also, *Bush v Shabahang*, 484 Mich 156, 176; 772 NW2d 272 (2009).

---

(3) If the defendant in an action alleging medical malpractice fails to allow access to medical records within the time period set forth in [MCL 600.2912b(6)], the affidavit required under subsection (1) may be filed within 91 days after the filing of the complaint.

[5] I disagree with the majority in this case that *Kirkaldy* provides the sole remedy for a defective AOM, given my belief that MCL 600.2301 provides an alternative remedy to the one posed by the majority in *Kirkaldy*, which, notably, did not cite or address the merits of applying MCL 600.2301.

4

In this case, judgment had not yet been entered and, in my view, an AOM is part and parcel of a medical-malpractice "proceeding," given that it must be filed with the medical-malpractice complaint. See Black's Law Dictionary (9th ed) (defining "proceeding" as including "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment"; "[a]ny procedural means for seeking redress from a tribunal or agency"; and "[a]n act or step that is part of a larger action"); see, also, *Bush*, 484 Mich at 176-177; *Boodt*, 481 Mich at 568 n 6 (CAVANAGH, J., dissenting).[6] Further, because MCL 600.2301 permits amendment "either in form or substance," amending the substance of an AOM to more clearly state the manner in which the breach of the standard of practice or care was the proximate cause of the injury is proper. See *Boodt*, 481 Mich at 569 (CAVANAGH J.,

---

[6] As I have recognized in the past, this Court has previously applied MCL 600.2301 or its predecessors to allow amendment of documents that fall under the category of a process or proceeding. See *Boodt*, 481 Mich 567-572 (CAVANAGH, J., dissenting); *Bush*, 484 Mich at 177 n 38. For this reason I disagree with the majority's suggestion that this Court has "long recognized" that an AOM cannot be amended under MCL 600.2301. Indeed, the only case that the majority cites for this position is *Freer v White*, 91 Mich 74; 51 NW 807 (1892). Yet *Freer* did not cite any Michigan authority for its assertion that amendments to "attachment affidavits" "have never been deemed admissible" under a predecessor of MCL 600.2301. *Id*. at 76. More importantly, however, *Freer* did not address the statute at issue in this case. Instead, *Freer* involved an "*attachment* affidavit" in an attachment proceeding. *Id*. (emphasis added). See, generally, MCR 3.103 (explaining the process for seeking a writ of attachment). Thus, because *Freer* involved an attachment proceeding, its statements regarding the applicability of the predecessor of MCL 600.2301 it discussed, which, by its terms, only expressly involved attachment affidavits, should not be read as applying to all affidavits generally, especially when this Court has held that statutes such as the predecessors of MCL 600.2301 should be "liberally construed." See *Beecher v Wayne Circuit Judges*, 70 Mich 363, 367; 38 NW 322 (1888).

5

dissenting); *Bush*, 484 Mich at 177 (recognizing that MCL 600.2301 allows for amendment of errors in form or substance).

Also, permitting amendment of a defective AOM would be "for the furtherance of justice," consistent with MCL 600.2301. As I explained in *Boodt*, justice is furthered by applying MCL 600.2301 in a case in which a statute operates as a "terminal trap" for the unwary when as here, defendants seek to avoid litigation of a potentially meritorious claim on the basis of a technical defect in an otherwise sufficient[7] and timely filed AOM. See *Boodt*, 481 Mich at 569 (CAVANAGH, J., dissenting). Additionally, when plaintiff's AOM is read as a whole, the contents of the AOM do not evidence an utter lack of a good-faith attempt to comply with the proximate-causation requirement of MCL 600.2912d(1)(d).[8] Accordingly, even if plaintiff's AOM were deficient, allowing the alleged defect to be cured under MCL 600.2301 would be in the furtherance of justice. See *Bush*, 484 Mich at 180-181.

Further, I do not believe that defendants' substantial rights would be affected by permitting MCL 600.2301 to cure the alleged defect in plaintiff's AOM. See *Bush*, 484 Mich at 177-178. Unlike an NOI, which is aimed at providing notice of a claim to a

---

[7] Notably, in this case, only the AOM's statement regarding the manner in which the breach of the standard of practice or care was the proximate cause of the injury is at issue.

[8] Instead, the AOM in this case indicated that, in order to comply with the applicable standard of care, defendants should have admitted the decedent to the hospital on January 22, 2002, and obtained the appropriate consultations on that date and that, as a direct and proximate cause of defendants' acts and omissions, the decedent died. Compare, *Bush*, 484 Mich at 178, 180 n 43, 182-183 (concluding that the defendant's one-page blanket denial provided an example of a failure to demonstrate a good-faith attempt to comply with the content requirements of the NOI statute).

6

defendant and promoting settlement, see *Roberts*, 470 Mich at 707-708 (MARILYN KELLY, J., dissenting), and *Bush*, 484 Mich at 174, the purpose of an AOM is to demonstrate that a valid claim exists. Thus, because an AOM is not intended to provide details in an effort to give notice of an impending claim and to promote settlement, a stronger justification likely exists for allowing a minor defect in the contents of an AOM to be cured. Stated another way, despite a technical defect in the AOM, a defendant would certainly be apprised of the fact that a health-care professional who had reviewed the plaintiff's medical records believed that there was a valid claim, furthering the intent of the AOM statute. And although a defendant is required to file an answer to a plaintiff's complaint within 21 days after an AOM is filed, a defendant's affidavit of meritorious defense is not dependent on the contents of a plaintiff's AOM. See MCL 600.2912e; cf. MCL 600.2912b(7) (requiring a defendant to submit a written response to a plaintiff's NOI).[9] Thus, I would not hastily conclude that a defendant's substantial rights would be affected by permitting any alleged defects to be cured under MCL 600.2301.[10]

---

[9] In my view, any claim of prejudice to defendants' rights rings hollow in this case. Like the AOM statute, the NOI statute similarly requires a statement regarding proximate causation. MCL 600.2912b(4)(e). In this case, defendants cannot legitimately claim that they would be unfairly prejudiced by allowing the alleged defects in the AOM to be cured, given that plaintiff's statement regarding proximate causation in the supplemental NOI was deemed sufficient by the Court of Appeals and defendants were served with plaintiff's supplemental NOI before plaintiff filed the complaint and AOM.

[10] For the reasons stated in this dissent, I respectfully disagree with the majority's conclusion that permitting a cure would affect defendants' substantial rights. See, also, *Bush*, 484 Mich at 178. Further, I respectfully disagree with the majority's suggestion that permitting a trial court to cure a technical defect within an AOM is erroneous. In my view, the majority's opinion effectively renders MCL 600.2301 nugatory.

7

Accordingly, even assuming arguendo that the AOM was deficient in this case, because I believe that the alleged defect can be cured pursuant to MCL 600.2301, I would remand this case to the trial court for consideration under that statute.

<div style="margin-left: 50%;">
Michael F. Cavanagh<br/>
Marilyn Kelly
</div>

# STATE OF MICHIGAN

## SUPREME COURT

DUJUAN LIGONS, Personal Representative
of the Estate of EDRIS LIGONS,

       Plaintiff-Appellant,

v                                     No. 139978

CRITTENTON HOSPITAL, a/k/a
CRITTENTON HOSPITAL MEDICAL
CENTER, DAVID BRUCE BAUER, M.D.,
and ROCHESTER EMERGENCY GROUP,
P.C.,

       Defendants-Appellees.

---

HATHAWAY, J. (*dissenting*).

I respectfully dissent from the majority's decision to dismiss plaintiff's medical malpractice action with prejudice. The majority holds that plaintiff's affidavits of merit (AOMs) were defective, that they cannot be amended pursuant to MCL 600.2301, and that plaintiff's complaint must therefore be dismissed with prejudice. The majority's conclusions are erroneous because plaintiff's AOMs were not defective and even in cases involving AOMs with content defects, MCL 600.2301 clearly provides relief. Moreover, the plain language of the AOM statute, MCL 600.2912d(1), does not contemplate, let alone require, that a plaintiff's complaint be dismissed with prejudice for defects contained in an AOM. Thus, the majority's decision ignores the plain language of the

relevant statutes. The majority abandons the rule of law and reaches its result by rewriting the applicable statutes. Accordingly, I dissent.

## I. THE REQUIREMENTS OF THE AOM STATUTE

At issue is whether plaintiff's AOMs met the requirements of MCL 600.2912d(1), the AOM statute. To correctly resolve this issue, we must first examine the language of the AOM statute and determine its correct interpretation. In examining this statute, we follow the established rules of statutory construction. The purpose of statutory construction is to discern and give effect to the intent of the Legislature.[1] In doing so, we first look to the actual language of the statute.[2] If a statute is clear and unambiguous, it must be enforced as written and no further judicial construction is allowed.[3] Simply stated, we must avoid a construction that would render any part of the statute nugatory,[4] and similarly, we are "not free to add language to a statute or to interpret a statute on the basis of this Court's own sense of how the statute should have been written."[5] Further, a

---

[1] *Potter v McLeary*, 484 Mich 397, 410; 774 NW2d 1 (2009), citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[2] *Potter*, 484 Mich at 410.

[3] *Sun Valley*, 460 Mich at 236.

[4] *People v McGraw*, 484 Mich 120, 126; 771 NW2d 655 (2009), citing *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

[5] *Kirkaldy v Rim*, 478 Mich 581, 587; 734 NW2d 201 (2007) (CAVANAGH, J., concurring).

statute must be read as a whole,[6] and while individual words and phrases are important, the words and phrases should be read in the context of the entire legislative scheme.[7]

MCL 600.2912d, the AOM statute, provides in pertinent part:

> (1) Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under [MCL 600.2169]. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> (a) The applicable standard of practice or care.
>
> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.
>
> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.
>
> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

The majority focuses on the requirements of subdivision (d), which states that the AOM shall contain a statement of "[t]he manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." In this case,

---

[6] See *Sun Valley*, 460 Mich at 237.

[7] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

3

plaintiff submitted two separate AOMs.[8]  The majority holds that these AOMs were deficient because they "failed to provide *any* statement of the manner in which the breach of the standard of care was the proximate cause of the injury alleged."[9]  This conclusion is disingenuous because the plaintiff's AOMs *did contain statements* regarding causation. The statements were just not made to the level of exacting detail that the majority asserts is required by the statute.  However, the majority's interpretation of what is required by MCL 600.2912d, the AOM statute, is erroneous.

In analyzing the AOM statute, we must be mindful that the Michigan Legislature has enacted many statutes requiring that a party detail certain facts or elements of a claim with varying levels of heightened specificity.  For example, the Legislature used the phrase "with specificity" in MCL 333.17015(10), MCL 333.22231(4), and MCL 769.1a(8).  The phrase "stating specifically" was used in MCL 38.416 and MCL 500.8133(3).  The Legislature mandated in MCL 38.14, MCL 125.1510(1),  MCL 408.1027(2)(b),  MCL 462.319(1)(a), MCL 600.557b(2), and MCL 600.6461(2) that a "detailed statement" be made; required a "full statement" in MCL 224.25, MCL 491.920(3), and MCL 500.424(2); required a "complete statement" in MCL 14.283(b)

---

[8] Plaintiff's AOM containing a statement from Dr. Fred Thomas provided in pertinent part that "[i]t is my opinion that had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate consults on January 22, 2002, as outlined in Dr. Sternbach's affidavit that Edris Ligons would not have died."  Plaintiff's AOM containing a statement from Dr. George Sternbach provided in pertinent part that "[a]s a direct and proximate cause of the imprudent acts and omission committed by the individuals identified herein, Edris Ligons, died."

[9] *Ante* at 15 (emphasis added).

4

and MCL 462.2(2); and required a "full and complete statement" in MCL 247.172, MCL 324.51904, and MCL 390.758.

The Legislature chose *not* to incorporate any of these phrases heightening the level of specificity in the AOM statute. If the Legislature had chosen to incorporate such qualifying language in MCL 600.2912d(1), then the majority might have a basis for its conclusion. However, MCL 600.2912d(1) is *silent* concerning the level of specificity with which the information in an AOM must be conveyed. Nothing in the plain language of this statute mandates the heightened level of specificity that the majority demands, and this Court is not free to add words or phrases to a statute. Thus, the requirement that the AOM "shall contain a statement of each of the following" simply means what it says.[10] The statute requires that "*a statement*" must be made, not a "detailed statement," "a complete statement," or a "full explanatory statement."

Moreover, the majority distorts the word "manner" as used in MCL 600.2912d(1)(d).[11] The majority opines that the word "manner" requires a detailed statement of "how" the breach caused the injury:

> We have often said that it is insufficient to simply state the result when required to state the manner in which there was a breach: The answer to "*How* was the standard of care breached?" is never "The standard of care was breached." *Similarly, answering the question "How was the breach*

---

[10] MCL 600.2912d(1).

[11] MCL 600.2912d(1)(d) states, "The *manner* in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." (Emphasis added.)

5

*the proximate cause of the injury?"* requires more than *"The breach caused the injury."*[12]

However, this conclusion is inconsistent with how the word "manner" has been interpreted in other statutes such as MCL 28.258(12)(b), MCL 52.202(1), and MCL 52.205. Our courts have consistently interpreted the word "manner" as used in relation to those statutes as allowing for a single word description such as "homicide," "suicide," or "accident." In *People v Williams*, the Court of Appeals wrote:

> Over the next two days Ashton's condition continually deteriorated. Ashton died on November 10, 2003. An autopsy revealed that the cause of death was loss of consciousness caused by brain swelling. The Medical Examiner determined that Ashton had been violently shaken, causing his head to snap back and forth. The Medical Examiner concluded that the *manner* of death was homicide.[13]

See also, *Maiden v Rozwood*, 461 Mich 109, 115; 597 NW2d 817 (1999) ("[T]he 'manner of death was an accident.'") (citation omitted); *People v Bailey*, 451 Mich 657, 664; 549 NW2d 325 (1996) ("'The manner of death is homicide.'") (citation omitted); *People v Schmitt*, unpublished opinion per curiam of the Court of Appeals, issued July 31, 2007 (Docket No. 264176), p 2 (ZAHRA, P.J., dissenting) ("The medical examiner determined the manner of Richard's death to be a homicide . . . ."), rev'd 480 Mich 963 (2007); and *People v Small*, unpublished opinion per curiam of the Court of Appeals, issued December 28, 1999 (Docket No. 205544), p 1 ("The assistant medical examiner

---

[12] *Ante* at 15 (second emphasis added).

[13] *People v Williams*, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2005 (Docket No. 256123), p 2.

testified that the cause of death was multiple gunshot wounds and that manner of death was homicide.").

Thus the use of the word "manner" in the AOM statute does not mandate a detailed description of how the breach caused the injury; rather the manner in which the breach was the proximate cause of the injury can be set forth in a similarly succinct description such as "the malpractice caused the death" or "the breaches of the standard of care caused the death," or "the death was caused by the breaches of the standard of care." Thus, all that MCL 600.2912d(1)(d) requires is a statement that the breach of the standard of care caused the result. To require the parties to provide further description creates a requirement not found in the language of the statute.

Moreover, the majority's ruling transforms an AOM into something that it is not. The AOM statute is one part of a larger statutory scheme for malpractice claims, and it must be read in the context of that larger legislative scheme. As set forth by the clear language of MCL 600.2912d(1), an AOM is designed only to act as certification that the claim is supported by the opinion of a qualified expert. The statute states that the plaintiff "shall file . . . an affidavit of merit signed by *a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness . . . . The affidavit of merit shall certify that the health professional has reviewed the notice* [*of intent*] . . . concerning the allegations contained in the notice . . . ."[14] Thus, an AOM is intended to function as a *certification* that the allegations contained within the notice of

---

[14] MCL 600.2912d(1) (emphasis added).

7

intent (NOI) are meritorious. An AOM is filed with the complaint and is not the notice pleading. The NOI is the notice pleading. The AOM serves as certification that the allegations of the claim are meritorious, and its *only* role is to deter the filing of unsupported claims. By failing to read the AOM statute in its entirety and in the context of the malpractice statutory scheme, the majority simply misconstrues the statute.

The majority compounds its error by focusing solely on the statements made in the AOM, rather than reading the AOM in concert with the NOI, as contemplated by the AOM statute. The AOM statute requires that "[t]he affidavit of merit shall certify that *the health professional has reviewed the notice* and all medical records supplied to him or her by the plaintiff's attorney *concerning the allegations contained in the notice . . . .*"[15] As evidenced by this plain language, an AOM is not a standalone document. Rather, it is to be *read in concert* with the NOI. The statute requires that the expert review the NOI and certify that he or she supports allegations contained therein, and while the statute requires the expert to make a statement on proximate causation, it does not require that the expert repeat the contents of the NOI in the AOM.

## II. THE SUFFICIENCY OF PLAINTIFF'S AFFIDAVITS OF MERIT

In this case, the NOI set forth in detail the nature of the claim and how the plaintiff's decedent, Edris Ligons, died. From the pleadings, plaintiff's allegations appear to be relatively straightforward and uncomplicated. The NOI and AOMs alleged

---

[15] *Id.* (emphasis added).

8

that professional negligence occurred during a visit to defendant Crittenton Hospital's emergency room, where Ligons was seen by defendant David Bruce Bauer, M.D. Plaintiff claimed that Ligons had suffered a perforation of her colon during a recently performed colonoscopy and that she developed sepsis as a result of the perforation. Ligons went to the emergency room for follow-up treatment, and plaintiff claimed that Dr. Bauer failed to admit her to the hospital for the proper diagnostic testing and treatment. Plaintiff further claimed that this improper treatment allowed the sepsis to become overwhelming, leading to multiple organ failure, causing Ligons's death. The NOI set forth the factual background of plaintiff's claim:

> Edris Ligons was a 54-year-old woman, with a history of colon polyps, with one atypical polyp found on a previous colonoscopy. She came to Crittenton Hospital for an out-patient follow-up colonoscopy on January 14, 2002. Dr. Tayeb noted during the procedure that the colon was very tortuous and pressure had to be applied to reach the cecum. The clinical diagnosis was diverticulosis and hemorrhoids.

> On January 22, 2002 Mrs. Ligons presented to the Emergency Department at Crittenton with a four-day history of vomiting, diarrhea, chills, and fever. She had a fever of 102.4. She had abdominal tenderness on examination. She had a [white blood cell count] of 15,400. An abdominal x-ray showed an abnormal gas pattern with mildly dilated small bowel loops, and paucity of gas or bowel content in the colon. The report indicated that this could reflect early or partial bowel obstruction. The radiologist specifically recommended progress views. She was treated for gastroenteritis and dehydration. She was given antibiotics and fluids. She was discharged within six hours.

> She went to Dr. Tayeb's office on the 23rd due to severe pain. She was immediately sent to the Emergency Department. Examination revealed changes consistent with peritonitis because of a perforated colon. She developed sepsis. Exploratory laparatomy revealed an extensive pelvic abscess, and surgical resection was not possible. Despite extensive

medication, the sepsis that developed due to the perforated colon led to multiple organ failure and death on January 29, 2002.

Plaintiff's supplemental NOI further stated:

As a direct and proximate result of the negligence and malpractice alleged above Edris Ligons experienced conscious pain and suffering and ultimately died due to the negligence. Specifically, had Dr. Bauer admitted the patient to the hospital on January 22, 2002 and had appropriate consults been obtained including surgery and [gastrointestinal] and had progress X-rays been obtained the patients [sic] peritonitis would have been diagnosed much earlier. The per[forated] colon would have been detected and surgery would have been performed much earlier. This would have avoided the overwhelming sepsis that led to the multi organ system failure and ultimately death.

The AOM signed by Dr. Fred Thomas certified that he had reviewed the NOI and all the medical records concerning the allegations contained in the notice and concluded, "It is my opinion that had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate consults on January 22, 2002, as outlined in Dr. Sternbach's affidavit that Edris Ligons would not have died." The AOM signed by Dr. George Sternbach similarly certified his review and concluded, "As a direct and proximate cause of the imprudent acts and omission committed by the individuals identified herein, Edris Ligons, died."

While I do not opine on whether plaintiff would ultimately prevail on the merits, it is pure folly to suggest that these statements do not meet the requirements of MCL 600.2912d(1)(d). To reach such an erroneous conclusion, the majority effectively ignores the statements that the "per[forated] colon would have been detected and surgery would have been performed much earlier" and "[t]his would have avoided the overwhelming sepsis that led to the multi organ system failure and ultimately death." The majority

10

further ignores the Dr. Thomas's certification that he had reviewed that statement and the supporting medical records and ignores his opinion that "had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate consults on January 22, 2002, as outlined in Dr. Sternbach's affidavit that Edris Ligons would not have died."

The majority's conclusion that the contents of the NOI must be repeated in the AOM is at odds with the plain language of the statute. Plaintiff's AOMs met the requirements of MCL 600.2912d(1)(d).[16] The AOMs, when read in concert with the NOI, set forth a "statement" regarding the "manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice." Nothing more is required by the statute. Thus, plaintiff's AOMs were not defective.

## III. DISMISSAL OF A CASE INVOLVING AN AOM WITH CONTENT DEFECTS IS NOT REQUIRED BY *KIRKALDY*

The majority further errs by holding that if an AOM contains any defect, the only possible remedy is dismissal under *Kirkaldy v Rim*.[17] In so opining, the majority expands the ruling of *Kirkaldy* well beyond its facts and legal conclusion. In *Kirkaldy*, the plaintiff's AOM was found to be defective because it was not signed by an expert who met the requirements of the expert-witness statute, MCL 600.2169. The plaintiff in *Kirkaldy* was not seeking relief from a defect in content. Instead, the plaintiff sought the

---

[16] This is not to suggest or imply that parties are not free to engage in repetition or that being repetitive renders an AOM defective. Parties may be repetitive; however, it is not required by the statute.

[17] *Kirklady*, 478 Mich 581.

11

ability to replace an AOM, signed by an unqualified expert, with an entirely new AOM signed by a qualified expert. Thus, *Kirkaldy* addressed the ability to substitute the original AOM for one signed by an entirely different expert witness. Nothing in *Kirkaldy* addressed an AOM containing purported defects in content. Rather, the defect at issue in *Kirkaldy* was that the expert was not qualified to support the claim. Significantly, the plaintiff in *Kirkaldy* filed a second complaint accompanied by a new AOM signed by a qualified expert. The plaintiff requested that the original case be dismissed without prejudice so that she could pursue the second complaint. This Court simply granted one of the avenues of relief requested by the plaintiff when it dismissed the case without prejudice.

*Kirkaldy* decided the issue of whether filing the original complaint tolled the period of limitations under MCL 600.5856, and this Court held that even an AOM signed by an unqualified expert tolls the period of limitations. *Kirkaldy* did not address whether alternative remedies short of dismissal, such as amendment of an AOM, were available under MCL 600.2301. Thus, it is erroneous to state that dismissal is the only remedy for an AOM with content defects because this Court did not address that issue in *Kirkaldy.*

## IV. DISMISSAL OF AN AOM WITH CONTENT DEFECTS IS CONTRARY TO THE AOM STATUTE

The proper starting point for identifying the required penalties and available remedies for AOMs with content defects is the language of the AOM statute itself. While MCL 600.2912d(1) mandates that a plaintiff shall not commence an action for medical malpractice without timely filing an AOM, *nothing* in the plain language of this statute

12

requires or compels dismissal of the case for defects in the AOM. Despite the majority's contrary conclusion, the AOM statute makes no reference whatsoever to a mandatory dismissal penalty in the event of a defect. Instead, the statute is *silent* regarding the consequences of filing an AOM that contains content defects. Thus, we must determine whether mandatory dismissal with prejudice was the intent of the Legislature when it enacted MCL 600.2912d.

The legislative history of the AOM statute reveals that the Legislature did not intend for a defect in an AOM to be grounds for dismissal with prejudice. The clearest indicator of this intent is the Legislature's complete rejection of a "mandatory dismissal with prejudice" clause contained in the original draft of the legislation. The AOM statute was originally introduced as part of Senate Bill No. 270 on January 28, 1993. AOMs (referred to as "certificate[s]" in SB 270 as introduced) were addressed in proposed § 2912d. Proposed § 2912d contained a mandatory dismissal penalty. The bill as introduced linked the NOI and the AOM together. It also provided for dismissal of claims without the benefit of tolling afforded in MCL 600.5856, which in essence would have resulted in a dismissal with prejudice. Section 2912d as introduced stated:

> (1) A person shall not commence an action alleging medical malpractice unless the complaint is accompanied by the certificate signed by the person or, if the person is represented by an attorney, by the attorney reflecting that the person has complied with section 2912f [concerning NOIs]. *If the complaint is not accompanied by the certificate required under this subsection, the complaint does not toll the statute of limitations as provided in section 5856(1).*

13

(2) Except as otherwise provided in this subsection, in an action alleging medical malpractice, *the court shall dismiss a claim not included in the notice required under section 2912f*. [Emphasis added; formatting altered from strikethrough/insert format to show language as proposed.]

Significantly, while AOMs and NOIs remained linked in the version of the bill actually adopted, the penalty provisions did not survive. There simply were not sufficient votes in the Legislature to enact a statute with such harsh penalties. This unequivocally demonstrates that mandatory dismissal was not the will of the Legislature. Michigan law makes clear that "[w]here the Legislature has considered certain language and rejected it in favor of other language, the resulting statutory language should not be held to explicitly authorize what the Legislature explicitly rejected."[18] Because the Legislature specifically omitted proposed dismissal language from the enrolled bill, it is unreasonable to conclude that the Legislature intended for courts to reinsert dismissal as the only permissible remedy. The majority's interpretation of the phrase "shall contain a statement" as meaning "shall dismiss the case if there is a possible defect no matter how minor" is misguided.[19]

---

[18] *In re MCI Telecom Complaint*, 460 Mich 396, 415; 596 NW2d 164 (1999); see also *Univ Med Affiliates, PC v Wayne Co Executive*, 142 Mich App 135, 140; 369 NW2d 277 (1985) (holding that the legislative history of a statute may be considered, and if it can be shown that certain language was affirmatively rejected, the court should not give the statute a construction that the Legislature plainly refused to give it); *Nation v WDE Electric Co*, 454 Mich 489, 492-493, 495; 563 NW2d 233 (1997); *Miller v State Farm Mut Auto Ins Co*, 410 Mich 538, 566; 302 NW2d 537 (1981); and *People v Adamowski*, 340 Mich 422, 429; 65 NW2d 753 (1954).

[19] It is ironic that the Legislature refused to enact the most severe penalty, dismissal with prejudice, for a complete failure to file an AOM, yet here, the majority adopts this severe penalty for purported minor content defects.

14

## V. CONTENT DEFECTS IN AN AOM MAY BE CORRECTED

The AOMs in this case were not defective. However, even in cases involving AOMs with content defects, a party who files a defective AOM is entitled to seek relief. The first question is whether a plaintiff is entitled to relief under the former version of MCR 2.118. The majority claims that a plaintiff whose case was pending while the former version of MCR 2.118 was in effect[20] is not entitled to relief under the former rule because an AOM is not a pleading. To reach this conclusion the majority disavows the holding in *Barnett v Hidalgo*, 478 Mich 151, 161; 732 NW2d 472 (2007), that an AOM is part of a pleading and, therefore, admissible as substantive evidence at trial because it constitutes an admission by a party opponent. However, now the majority claims that because *Barnett* held that an AOM is only "part of the pleadings,"[21] an AOM is not a "pleading" subject to amendment under MCR 2.118. This distinction is dubious at best, as nothing in former MCR 2.118 stated or suggested that a pleading can be amended but a part of it cannot.

---

[20] On February 16, 2010, this Court amended the court rules to make it clear that AOMs may be amended. Specifically, MCR 2.112(L)(2)(b) as amended now provides in pertinent part that "[a]n affidavit of merit or meritorious defense may be amended in accordance with the terms and conditions set forth in MCR 2.118 and MCL 600.2301." The majority's decision to preclude use of the amended rules conflicts with the general rule that "'the norm is to apply the newly adopted court rules to pending actions unless there is reason to continue applying the old rules.'" *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 337; 602 NW2d 596 (1999), quoting *Davis v O'Brien*, 152 Mich App 495, 500; 393 NW2d 914 (1986); see also *People v Jackson*, 465 Mich 390; 633 NW2d 825 (2001); 1 Longhofer, Michigan Court Rules Practice (5th ed), §§ 1102.1 and 1102.2, pp 3-4.

[21] *Barnett*, 48 Mich at 161.

15

Regardless of whether relief is available under the former court rule, the majority completely disregards MCL 600.2301. Once again, this Court must turn to the actual language of the statute. MCL 600.2301 contains two clear and unambiguous provisions:

> The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.

The plain language of this statute imposes a duty that cannot be ignored on all courts of this state. It requires that "[t]he court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties." This is not a discretionary provision. It is a legislative mandate that this Court must follow. Unless substantial rights are affected, the court *shall* disregard any error or defect at every stage of the action or proceeding. This provision applies to all actions or proceedings. Thus, even if we were to accept the majority's erroneous conclusion that an AOM is not a pleading, an AOM is nevertheless part of the "action" or "proceeding." Clearly, the failure to repeat statements already made cannot be characterized as affecting a substantial right. According to the plain language of the statute, this Court must disregard technical defects, such as the ones the majority claims are in plaintiff's AOMs. By failing to do so, the majority ignores a clear and direct mandate imposed on this Court by the Legislature.

Moreover, even in instances in which an AOM contains more substantial defects or substantial rights might be affected, trial courts still have discretion under MCL

16

600.2301 to afford relief by way of amendment when justice so requires. MCL 600.2301 states that "[t]he court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just . . . ." MCL 600.2301 clearly provides for amendment of more than just pleadings. It allows for amendments of "*any* process, pleading or proceeding." An AOM is without question part of the process or proceeding. Thus, an AOM is a document that courts have the power to amend.

The majority claims it can disregard the plain language of MCL 600.2301 by asserting that *Freer v White*, 91 Mich 74, 76; 51 NW 807 (1892), represents the long-established law in Michigan that amendment of an affidavit is prohibited. However, the majority's reliance on *Freer* (discussing "attachment" affidavits used in debtor-creditor disputes in the 1800s) is misguided.[22] In *Emerson v Detroit Steel & Spring Co*, 100 Mich 127, 132; 58 NW 659 (1894), this Court limited the holding in *Freer* to its facts and recognized that *Freer* had not overruled *Barber v Smith*, 41 Mich 138; 1 NW 992 (1879), which had previously allowed for amendments to attachment affidavits.[23] Accordingly,

_____

[22] *Freer* has not been cited as authority by any court in this state since 1907.

[23] *Barber* favored curing defects in an affidavit by amendment and held that "[t]his power to cure errors and irregularities by amendment is a useful one, if wisely exercised, and when no provision to the contrary is made it applies as fully to attachment suits as to others." *Barber*, 41 Mich at 144. The defect at issue in *Barber* "was not such a defect as to necessarily and at once to destroy the process and put an end to the proceeding, but a defect remediable under the power of the court to correct errors in its proceedings during their progress." *Id*. at 145. Accordingly, *Barber* concluded that "in case the proceeding while open, and at a stage permitting correction by amendment, should be brought into question collaterally, it would not be competent to reject it as void on account of the

17

*Freer* does not, as the majority claims, support its decision to ignore the plain language of MCL 600.2301.

## VI.  WHEN COURTS SHOULD ALLOW AMENDMENT OF AN AOM

Next we must determine under what circumstances a court should allow amendment of an AOM with content defects that affect the substantial rights of the parties.  While allowing an amendment is a discretionary matter, a court should view a party's request to amend in light of the statutory directive that amendments should be in "the furtherance of justice, on such terms as are just . . . ."[24]  If failing to allow amendment would result in the dismissal of a plaintiff's case with prejudice, as the majority holds in this case, the result would not be in the furtherance of justice.  Such a result slams the courthouse doors in the plaintiff's face, leaving that plaintiff without a forum in which to pursue a claim that an expert has certified as meritorious.

Citizens of this state are entitled to a forum to resolve claims on their merits.  Furtherance of justice cannot be achieved without providing citizens access to justice.  Access to justice is a cornerstone of our system of jurisprudence, and without it, confidence in the judiciary is lost.  Allowing for amendment of an AOM to correct defects in content is in the furtherance of justice.  Such relief permits a plaintiff to pursue

---

defect."  *Id*.; see also *Walden v Crego's Estate*, 288 Mich 564; 285 NW 457 (1939) (holding that statutorily required attachment affidavits that contain defects in content may be corrected by amendment).

[24] MCL 600.2301.

his or her claim and have it decided on its merits rather than on a hypertechnical reading of an AOM or a misguided reading of the AOM statute.

Unfortunately, instead of following the rule of law, the majority denies the plaintiff in this case access to justice by rewriting the language of the AOM statute in order to come to its result.

## VII.  CONCLUSION

I respectfully dissent from the majority's decision to dismiss this medical malpractice action with prejudice.  The majority's conclusions are erroneous because plaintiff's AOMs were not defective and even in cases involving AOMs with content defects, MCL 691.2301 clearly provides relief.  Moreover, the plain language of the AOM statute does not contemplate, let alone require, that a plaintiff's complaint be dismissed with prejudice for defects contained in an affidavit.  The majority's decision ignores the plain language of the relevant statutes.  The majority abandons the rule of law and reaches its result by rewriting the applicable statutes.


Diane M. Hathaway


19